**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER ROBERTS, individually and on behalf of all others similarly situated, *Plaintiff*, v. EXPRESS SCRIPTS HOLDING COMPANY, a Delaware corporation, MEDCO HEALTH SOLUTIONS, INC., a Delaware corporation, and ACCREDO HEALTH GROUP, INC., a Delaware corporation, *Defendants*. | CASE NO.:  4:15-cv-1368 JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jennifer Roberts ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Express Scripts Holding Company ("Express Scripts"), together with its wholly-owned subsidiaries, Medco Health Solutions, Inc. ("Medco"), and Accredo Health Group, Inc. ("Accredo" and collectively with Express Scripts and Medco, "Defendants"), to stop their robocalling practices and obtain redress for the thousands of individuals injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. Express Scripts, on its own and through its Medco subsidiary, acts as a pharmaceutical benefits manager that also owns and operates its own mail-order pharmacies, including Accredo, through which it directly sells prescription medications to members of the public. In this capacity, and through its Medco and Accredo subsidiaries, Express Scripts routinely pushes thousands of robocalls to the cellphone numbers of consumers, without consent and despite objections, at rates approaching twenty calls per number per week, all to encourage drug consumption and the use of its own pharmacies. It continues pushing such calls even when, as with Plaintiff, it has been told it has the wrong number and has been asked to stop.

2. One of Express Scripts' Medco employees has complained that "I used to make those calls . . . Even if you requested 'do not call,' you will still get the call. No matter how many times you hung up, they will still call you. They do not have any policy regarding any limits on how many times you declined or hung up. If you declined 4x or hung up 8x, you will still get the call."[1]

3. Consumers have resorted to language like "torture," "abomination," "nightmare," "evil," "disgusting," "criminal," and "the worst" to describe their interactions with Defendants.[2]

---

[1] 800notes.com, *http://800notes.com/Phone.aspx* (last visited September 1, 2015) (querying 1-800-633-2662). *See also* 24/7 Wall St., "Worst Companies to Work For," *http://247wallst.com/special-report/2015/06/29/the-worst-companies-to-work-for/4* (last visited September 1, 2015) (ranking Express Scripts #1 on its 2015 list of "Worst Companies to Work For").

[2] *See generally* Customer Service Scoreboard, *http://www.customerservicescoreboard.com/Express+Scripts* (rating Express Scripts "Terrible"—the worst possible—with 1,247 negative comments out of 1,270); Consumer Affairs, *http://www.consumeraffairs.com/rx/express_scripts.html* (showing only 3 out of approximately 1,262 reviewers—less than one-forth of one percent—rating Express Scripts above "2 stars" (out of five)); Mixed Up Mommy, *http://mixedupmommy.com/2013/11/12/how-is-accredo-pharmacy-getting-away-with-this*; Healthline, "Mail Order Prescription Nightmares,"

One person complained that Defendants' ceaseless "robocalls would go in infinite loops where it called the wrong person, and if we said we were not the patient they were looking for, they would call back."[3] Another complained of being "harassed with repeated robo calls from Accredo that they could not seem to shut off."[4] A third stated that "[n]o matter how many times you explain to [Medco] that you have never done business with them, they refuse to take [you] off their calling list."[5] Similar complaints are legion (*see* Common Factual Allegations, below).

4.  Plaintiff, like thousands of others, has never had any type of relationship with any of the Defendants, has never consented to receive their calls, and has specifically requested that they stop calling. Nonetheless, as with thousands of others, she receives dozens of robocalls from Defendants each week, often bundled in daily groups of three and separated by regular, automated intervals of approximately one-hour and twenty-seconds each.

5.  The Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), prohibits companies from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). It provides for injunctive relief and $500 in statutory damages for each such

---

*http://www.healthline.com/diabetesmine/mail-order-prescription-nightmares#4* (noting "A Google search for 'Express Scripts complaints' brings up pages of grievances . . . . If those are just the top 1,000+ complaints, who know how many there actually are?") (last accessed September 1, 2015).

[3]   Ripoff Report for Defendants, *http://www.ripoffreport.com/r/Express-Scripts/nationwide/Express-Scripts-Medco-Accredo-Express-Scripts-sent-wrong-medication-to-wrong-patients-1188951* (last accessed September 1, 2015).

[4]   Complaints Board for Accredo, *http://www.complaintsboard.com/complaints/accredo-accredo-should-be-shut-down-c751125.html* (last accessed September 1, 2015).

[5]   *See* 800Notes.com, *supra* note 1.

3

violation, an amount that a Court may treble where—like here—the statute was "willfully or knowingly" violated. *Id*.

6. The wrong-number robocalls at issue in this Complaint were not made for emergency purposes or with the prior express consent of the called parties. Moreover, Defendants continued calling wrong numbers even when asked to stop. As such, Defendants have willfully and knowingly violated and continue to willfully and knowingly violate the TCPA. These violations caused and continue to cause Plaintiff Jennifer Roberts and members of the putative Class (defined below) to experience actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the costs for the receipt of such telephone calls.

7. In response to Defendants' unlawful conduct, Plaintiff Jennifer Roberts brings the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited phone call activities as well as an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

8. Plaintiff Jennifer Roberts is a natural person and citizen of the State of Missouri.

9. Defendant Express Scripts Holding Company is a corporation incorporated and existing under the laws of the State of Delaware with its principal place of business located at 1 Express Way, St. Louis, Missouri, 63121. It conducts business throughout this District, the State of Missouri, and the United States.

10. Defendant Medco Health Solutions, Inc., is a corporation incorporated and existing under the laws of the State of Delaware and is a wholly-owned subsidiary of Defendant Express Scripts Holding Company, with its principal place of business located at 1 Express Way,

St. Louis, Missouri, 63121. It conducts business throughout this District, the State of Missouri, and the United States. It identifies itself in outgoing calls as "Express Scripts."

11. Defendant Accredo Health Group, Inc., is a corporation incorporated and existing under the laws of the State of Delaware and is a wholly-owned subsidiary of Defendant Express Scripts Holding Company, with its principal place of business located at 1640 Century Center Parkway, Memphis, Tennessee, 38134. It conducts business throughout this District, the State of Missouri, and the United States. It identifies itself in outgoing calls as "Accredo, an Express Scripts company."

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Express Scripts Holding Company, Medco Health Services, Inc., and Accredo Health Group, Inc., because they have headquarters in this district, they conduct significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants have headquarters here, because Defendants conduct significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON FACTUAL ALLEGATIONS

14. Defendant Express Scripts is a pharmacy benefits manager. It acts as a third-party intermediary in the healthcare market, administering prescription claims on behalf of large health plans and corporate clients. It also owns and operates certain mail-order pharmacies.

15. Defendant Medco is also a pharmacy benefits manager. It was fully acquired by Express Scripts in 2012, acts at the direction of Express Scripts, and is under Express Scripts' full control. Visits to "www.medco.com" automatically redirect to "www.express-scripts.com." Medco identifies itself as "Express Scripts" during outgoing telephone calls.

16. Defendant Accredo is a specialty mail-order pharmacy fully owned and operated by Express Scripts. It acts at the direction of Express Scripts and is under Express Scripts' full control. Accredo identifies itself as "Accredo, an Express Scripts company" during outgoing telephone calls.

17. Together, Defendants employ various "adherence" tools and other programs to encourage people to purchase drugs from Accredo and other Express Scripts pharmacies. These tools include, among other things, certain robocalling algorithms associated with a program called "ScreenRx."

18. One of the patents associated with ScreenRx, entitled "Methods and systems for member messaging," describes an "embodiment" that "utilizes an automated telephone calling system that communicates with a member using computer generated scripting and a voice recognition engine."[6] Similarly, another description of a ScreenRx embodiment states that "a member may be contacted with a fully automated electronic computer-to-human communication system, a highly sophisticated Interactive Voice Response (IVR) systems, utilizing a sophisticated computer generated automated attendant voice and voice/speech recognition and/or touch tone recognition, Dual-Tone Multi-Frequency (DTMF) signaling technology to communicate with the member . . . . [R]ather than utilizing a live attendant or consultant with a

---

[6] Google Patents, *ScreenRx*, *http://www.google.com/patents/US8799204* (last accessed September 1, 2015).

6

consultant user interface that prompts the consultant/attendant, the system may be fully automated with a fully automated attendant where the intelligence of the automated attendants questions and the responses, hints, or suggestions all stem from the logic tree." *Id*.

19.     Defendants recently completed a "multi-year pilot program that applied ScreenRx technology to assist more than 600,000 members."[7] Among other things, this application of "ScreenRx technology," along with Defendants' various other programs, involved sending robocalls to hundreds of thousands of individuals.

20.     Unfortunately for consumers, Defendants' robocalling systems frequently autodial wrong numbers, many of which are cellphone numbers.

21.     Due to the multitude of complaints, Defendants have been aware of this continuing "wrong number" problem, yet they refuse to address it.

22.     Consequently, Defendants, while using artificial or prerecorded voices, have knowingly and willfully robocalled the "wrong number" cellphones of untold thousands of individuals who never gave them consent to make such calls.

23.     Consumer complaints against Defendants for robocalling wrong numbers are legion:[8]

- "Robo call, and they got the wrong number besides."

- "I got a call during school and I listened to the message afterward, but I couldn't tell what they said. I'm 14 and I don't give my number to anyone but friends. Do you know how they might have gotten it?"

---

[7]     PR Newswire, *http://www.prnewswire.com/news-releases/express-scripts-launches-screenrxsm-industrys-first-solution-combining-early-detection-and-tailored-interventions-to-address-nations-317-billion-problem-of-medication-nonadherence-147554655.html* (last accessed September 1, 2015).

[8]     *See*, *e.g.*, 800notes.com, *supra* note 1 (querying 1-800-633-2662, 1-800-496-4910, 1-800-803-2523, 1-800-282-2881, 978-236-7572, 978-775-6393, 901-381-7555, and 412-515-1241).

7

- "Have gotten calls from this number for the past three days. I've called them once and talked to a very nice lady there. She looked up my name and birthday and found nothing for me in their system. We agreed it was an error and that the numbers were probably transposed by someone who had submitted an order. Problem is they still call."

- "They've been calling me once in a while asking for a person that isn't me. The one time I've picked up to tell them that I'm not who they want, nothing happened."

- "Keep getting automated calls and voicemails for Deborah something. The message says to call back at 1-800-705-2126 but when I finally called back (to tell them to stop calling me, they have the wrong number!) the automated system tells me to call the number 1-800-705-2126. [??] This IS the number I'm calling into, to get this message!"

- "Receiving robo calls from this company. Have NEVER done business with them. This is illegal."

- "They call me-- I answer, they hang up. They are not my pharmacy, I have asked them to stop calling and they continue to call."

- "'I've been receiving calls from this number twice a day, every day for the past two weeks . . . I do not have an account. . . and would never have anything to do with a company that has harassed so many of us for so long."

- "I have absolutely no connection with Medco. . . . My employer doesn't use them nor do I have a personal health plan that uses them. I certainly won't ever use them because they won't stop calling no matter how many times I tell them to stop calling."

- "No one at this number has ever done business with this company."

- "Recorded message states that caller is Express Scripts -- never heard of them."

- "No matter how many times you explain to [Defendant] that you have never done business with them, they refuse to take me off their calling list."

24. Defendants know they send robocalls to wrong numbers, yet willfully persists in making such calls anyways, even after, and often long after, being told to stop.

8

## FACTS SPECIFIC TO PLAINTIFF JENNIFER ROBERTS

25.     Plaintiff Jennifer Roberts owns a personal cellphone.

26.     Like thousands of others, Plaintiff Jennifer Roberts is not and has never been a customer of any of Defendants and has never given any of Defendants permission to call her at any telephone number, much less her private cellphone number.

27.     Nonetheless, after 8:00 PM on March 23, 2015, Defendant Accredo, acting both on its own and on behalf of Express Scripts, made an autodialed robocall to Plaintiff Jennifer's private cellphone number, announcing itself as "Accredo, an Express Scripts company," and requesting to speak with a "William."

28.     Plaintiff Jennifer is not and has never been known as "William," a fact she explained to Accredo several times during its first call to her.

29.     Specifically, after navigating through Accredo's automated menus to reach a human representative, Plaintiff clearly and expressly explained that she is Jennifer, that "Jennifer" is not "William," that she does not know "William," that she cannot take any messages for some "William" whom she does not know, that the number Accredo called was her personal cellphone number (not "William's"), that even if some unknown "William" had her number at some point in the past he did not have it anymore, that Accredo had the wrong number, and that she was officially instructing Accredo to place her number on its internal do-not-call list. This call went on for minutes.

30.     Nonetheless, Accredo has inundated Plaintiff's private cellphone number with at least 50 additional robocalls since being told it had the wrong number and being asked to stop. *See, e.g.,* **Figure 1**, below (showing, 49 robocalls over 25 days from an "ACCREDO RX" to Plaintiff's private cellphone number).

9

| ACCREDO RX | 8446657345 | 03/23/2015 08:04:05 PM |
| ACCREDO RX | 8446657345 | 03/24/2015 03:40:42 PM |
| ACCREDO RX | 8446657345 | 03/25/2015 10:20:58 AM |
| ACCREDO RX | 8446657345 | 03/25/2015 10:21:53 AM |
| ACCREDO RX | 8446657345 | 03/25/2015 10:23:28 AM |
| ACCREDO RX | 8446657345 | 03/27/2015 02:21:33 PM |
| ACCREDO RX | 8446657345 | 03/27/2015 03:45:59 PM |
| ACCREDO RX | 8446657345 | 03/28/2015 11:24:25 AM |
| ACCREDO RX | 8446657345 | 03/28/2015 12:24:51 PM |
| ACCREDO RX | 8446657345 | 03/28/2015 12:30:00 PM |
| ACCREDO RX | 8446657345 | 03/28/2015 01:25:21 PM |
| ACCREDO RX | 8446657345 | 03/30/2015 02:58:58 PM |
| ACCREDO RX | 8446657345 | 03/30/2015 03:59:23 PM |
| ACCREDO RX | 8446657345 | 03/31/2015 02:43:47 PM |
| ACCREDO RX | 8446657345 | 03/31/2015 03:44:51 PM |
| ACCREDO RX | 8446657345 | 03/31/2015 05:02:11 PM |
| ACCREDO RX | 8446657345 | 04/01/2015 01:21:33 PM |
| ACCREDO RX | 8446657345 | 04/01/2015 02:21:57 PM |
| ACCREDO RX | 8446657345 | 04/01/2015 03:22:17 PM |
| ACCREDO RX | 8446657345 | 04/02/2015 01:49:47 PM |
| ACCREDO RX | 8446657345 | 04/02/2015 02:50:09 PM |
| ACCREDO RX | 8446657345 | 04/02/2015 03:50:27 PM |
| ACCREDO RX | 8446657345 | 04/03/2015 01:14:32 PM |
| ACCREDO RX | 8446657345 | 04/03/2015 02:14:56 PM |
| ACCREDO RX | 8446657345 | 04/03/2015 03:15:14 PM |
| ACCREDO RX | 8446657345 | 04/04/2015 10:32:22 AM |
| ACCREDO RX | 8446657345 | 04/04/2015 11:32:52 AM |
| ACCREDO RX | 8446657345 | 04/04/2015 12:33:25 PM |
| ACCREDO RX | 8446657345 | 04/06/2015 04:43:52 PM |
| ACCREDO RX | 8446657345 | 04/06/2015 06:22:06 PM |
| ACCREDO RX | 8446657345 | 04/06/2015 07:22:53 PM |
| ACCREDO RX | 8446657345 | 04/07/2015 02:17:28 PM |
| ACCREDO RX | 8446657345 | 04/08/2015 12:59:55 PM |
| ACCREDO RX | 8446657345 | 04/08/2015 02:00:20 PM |
| ACCREDO RX | 8446657345 | 04/08/2015 03:00:41 PM |
| ACCREDO RX | 8446657345 | 04/09/2015 12:54:09 PM |
| ACCREDO RX | 8446657345 | 04/09/2015 01:54:39 PM |
| ACCREDO RX | 8446657345 | 04/10/2015 12:41:26 PM |
| ACCREDO RX | 8446657345 | 04/11/2015 09:17:18 AM |
| ACCREDO RX | 8446657345 | 04/11/2015 10:17:38 AM |
| ACCREDO RX | 8446657345 | 04/11/2015 11:18:04 AM |
| ACCREDO RX | 8446657345 | 04/13/2015 01:06:24 PM |
| ACCREDO RX | 8446657345 | 04/14/2015 12:49:33 PM |
| ACCREDO RX | 8446657345 | 04/15/2015 05:07:29 PM |
| ACCREDO RX | 8446657345 | 04/16/2015 12:12:13 PM |
| ACCREDO RX | 8446657345 | 04/16/2015 02:57:48 PM |
| ACCREDO RX | 8446657345 | 04/17/2015 12:14:12 PM |
| ACCREDO RX | 8446657345 | 04/17/2015 01:14:32 PM |
| ACCREDO RX | 8446657345 | 04/17/2015 02:14:54 PM |

**Figure 1** (depicting dozens of "ACCREDO RX" robocalls.)

31. These Accredo calls always show up on Plaintiff's caller ID as "ACCREDO RX," always start with the message "This is Accredo, an Express Scripts Company," and always request that someone named "William" call "about an order" "since it is important to place this order soon." These robocalls come from the number 1-844-665-7345, offer a callback number, and do not present any opportunity to opt-out from receiving future calls.

32. Similarly, Medco, acting on behalf of Express Scripts, also sends wrong-number robocalls to Plaintiff's private cellphone number. These calls show up as "MEDCO" on

10

Plaintiff's caller ID, start with the message "This is Express Scripts," and leave a message for someone named "Scotty." As with Accredo's "William" calls, Plaintiff Jennifer Roberts is not "Scotty" and has never been known as "Scotty." The first such "MEDCO" robocall occurred on June 11, 2015. These robocalls come from the number 1-800-987-4902, do not offer any callback number, and do not present any opportunity to opt-out from receiving future calls.

33. Express Scripts owns, operates, and controls the conduct of both Accredo and Medco. Accredo and Medco both place robocalls at Express Scripts' direction and for Express Scripts' benefit, using Express Scripts' ScreenRx program or otherwise following calling policies and practices established and imposed by Express Scripts. Both Accredo and Medco placed the robocalls at issue in this Complaint on behalf of Express Scripts while having actual or apparent authority to act on Express Scripts' behalf.

34. Express Scripts, Accredo, and Medco are closely related companies, and both Accredo and Medco represent in their robocalls that they are calling either as "Express Scripts" or as "an Express Scripts company." Due to this, call recipients (like Plaintiff Jennifer Roberts) reasonably expect that any wrong-number complaints and do-not-call requests made to either Accredo or Medco will be applied to Express Scripts itself as well as any affiliated Express Scripts-owned companies.

35. Judging by the volume of online complaints, Plaintiff's experience is not isolated or even unusual. Rather, as they have done to thousands of others, each of the Defendants—Express Scripts, Medco, Accredo—have persistently and knowingly caused robocalls to be placed to Plaintiff's private cellphone number, often several times per day, despite Plaintiff's clear wrong-number complaint and do-not-call instructions.

11

## CLASS ALLEGATIONS

36. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All persons in the United States who: (1) received more than one telephone call placed by or on behalf of Express Scripts, Accredo, or Medco; (2) on their cellular telephone; (3) placed using an artificial or prerecorded voice; and (4) that stated the call was being placed to a person different from the person who is the subscriber or customary user of the cellular telephone number that received the call.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

37. **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Class members can be easily identified through cross-referencing Defendants' records with telephone databases.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

    a) whether the calls placed by Defendants used artificial or prerecorded

      voices;

   b)  whether Defendants' calls were made, without consent, to wrong numbers;

   c)  whether Defendants' conduct violated the TCPA; and

   d)  whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

  39.  **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct towards Plaintiff and the Class.

  40.  **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

  41.  **Superiority**:  This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendants' actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendants. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to

all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

42. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

43. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44. Defendants Accredo and Medco, without having prior express consent, made more than one telephone call to cellphone numbers belonging to Plaintiff and the other members of the Class.

45. Defendants Accredo and Medco made these calls while using artificial or prerecorded voices.

46. Defendants Accredo and Medco made these calls at the direction of, for the benefit of, and on behalf of their parent company, Express Scripts, all while acting with actual or apparent authority as agents of Express Scripts.

47. By making telephone calls to Plaintiff's and the Class members' cellular telephones numbers while using artificial or prerecorded voices, and/or by having such calls made on their behalf, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

48. As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, inter

alia, a minimum of $500 in damages for each such violation.

49. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jennifer Roberts on behalf of herself and the Class, respectfully requests that this Court enter an order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Jennifer Roberts as class representative, and appointing her counsel as Class Counsel;

B. Declaring that Defendants' actions, as set out above, violate the TCPA, 47 U.S.C. § 227;

C. Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D. Awarding actual and statutory damages;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees; and

F. Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

15

Respectfully submitted,

**JENNIFER ROBERTS**, individually and on behalf of all others similarly situated,

Dated: September 2, 2015

By:  /s/  Kevin P. Green
  One of Plaintiff's Attorneys

Thomas P. Rosenfeld, #35305MO
tom@ghalaw.com
Kevin P. Green, #63497MO
kevin@ghalaw.com
GOLDENBERG HELLER ANTOGNOLI
& ROWLAND, P.C.
1824 Chouteau Avenue
St. Louis, Missouri 63103
Tel: 618.656.5150
Fax: 618.656.6230

Rafey S. Balabanian*
rbalabanian@edelson.com
Ari J. Scharg*
ascharg@edelson.com
Alicia E. Hwang*
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Jarrett L. Ellzey*
jarrett@hughesellzey.com
HUGHES ELLZEY, LLP
Galleria Tower I
2700 Post Oak Blvd., Ste. 1120
Houston, Texas 77056
Tel: 713.554.2377
Fax: 888.995.3335

*Pro hac vice* admission to be sought

*Counsel for Plaintiff and the Putative Class*

16